FRIIS v. GAHAN.*

(Division B.   May 25, 1925.)

[104 So. 170.   No. 24983.]

APPEAL AND ERROR. *Judgment for guest injured in automobile not reversed because of instructions whose error, if any, was harmless.*

In a suit for damages for personal injuries to a guest in an automobile, where the proof for the defendant shows he was guilty of gross negligence, the court will not reverse the judgment rendered in such suit because of a charge for plaintiff embracing the provisions of section 5777, Hemingway's Code; section 4, chapter 116, Laws of 1916, nor for an instruction embracing the provisions of section 5785. Hemingway's Code; section 12, chapter 116, Laws of 1916; such instructions being harmless, if error at all.

---

*Headnote 1.   Appeal and Error, 4 C. J., section 3026.

APPEAL from circuit court of Adams county.

HON. R. L. CORBAN, Judge.

Action by Edwina Gahan, by next friend against C. A. Friis. From judgment for plaintiff, defendant appeals. Affirmed.

*Ratcliff & Kennedy,* for appellant.

Edwina Gahan, a young lady fourteen years of age, by her next friend and father, Ed Gahan, brings this suit against C. A. Friis, a resident of Natchez, Adams county, Mississippi, alleging that Mr. Friis was the owner of a five-passenger automobile and invited her, along with others, to make a trip from Natchez, Mississippi, to Vicksburg, and return. When about four miles out of Vicksburg on the return trip and in the nighttime, and while Mr. Friis was running the car, at a reckless speed and in excess of ten miles per hour as he approached a road intersection and a bridge, he negligently and carelessly drove the car over an embankment whereby the plaintiff was severely injured.

The court gave the following instruction for the plaintiff: ''The court instructs the jury for the plaintiff that if they believe from the evidence in this case that the defendant, upon approaching the bridge at or near where the injury to plaintiff occurred and while approaching said bridge, operated his car at a greater rate of speed than ten miles per hour, then under the law the defendant was guilty of negligence; and in this case, if they further believe from a preponderance of the evidence that such negligence of the defendant was the cause of the car going over the embankment or contributed to the car going over the embankment whereby plaintiff was injured, that it is the sworn duty of the jury to find for the plaintiff in such sum as they may believe from the evidence will compensate her for the injuries she sustained not to exceed the sum of seven thousand five hundred dollars, the amount sued for.'' This instruction is erroneous. First: It is based on the erroneous assumption

that chapter 116 of the Laws of 1916, sections 5777 and 5778, Hemingway's Code, applies to passengers or guests in an automobile.

It will be noted that by the above act the legislature has made certain regulations with respect to the operation of motor vehicles on the public roads and provided that in case of actions for damages that the proof of injury and the violation of the statute should make out a *prima-facie* case. This provision, or rule of evidence as it is denominated by the statute, itself, is similar to and follows the statute as to the rule of evidence in actions against railroad companies, being section 1985 of the Code of 1906, section 1645, Hemingway's Code, which, in brief, provides that proof of injury by railroad corporations, etc., shall be *prima-facie* evidence of want of skill. In *Yazoo Railroad Co.* v. *Humphrey,* 83 Miss. 721, 36 So. 154, this court held that the statute as to the *prima-facie* case against a railroad company did not apply in a suit by a passenger against a railroad company for injuries. After the decision of the court in the case just cited, the legislature amended the *prima-facie* statute as against the railroads by providing: "This section shall also apply to passengers and employees of railroad corporations and of such other corporations, companies, partnerships and individuals." See Amendment, chapter 215, Laws of 1912.

It therefore follows, and by the same manner of reasoning, that the so-called *prima-facie* statute as against the operator of a motor vehicle does not apply in a suit against the owner or operator by a passenger or a guest but merely applies to third persons on the highway and who might be injured while the owner is violating some provisions of the statute. The statute shows on its face that the provisions were enacted for the purpose of protecting traffic then on such highway and not for passengers or persons in the automobile. The railroad statute now applies to passengers but was made so by a legislative act.

## II.

If, we concede for the sake of argument, section 5785 of Hemingway's Code, making a rule of evidence in an action brought for injuries caused by automobile, did apply to an action by a guest, yet the instruction in this case goes much further than the rule of evidence permitted by that statute. The statute provides that proof of injury and violation of any of the provisions of the chapter shall make out a *prima-facie* case. While this instruction advises the jury that a violation of the statute makes out a conclusive case, the jury was instructed that if the car was operated at a greater rate of speed than ten miles per hour, that the defendant was guilty of negligence. The error is apparent without further argument.

## III.

The instruction permitted the plaintiff to recover if the jury believed that the acts complained of were a cause or a contributing cause to the injury, while, under the law, it seems, of necessity, that the acts complained of should have constituted negligence and that such negligence was the proximate cause of the injury.

This instruction is likewise based upon the erroneous assumption that chapter 116 of the Laws of 1916, applies to this case, but, conceding *arguendo,* that it does, yet the instruction is erroneous under the statute because it is a peremptory instruction that the defendant was approaching a sharp curve at the bridge, when the evidence by the plaintiff is to the effect that it was a slight curve and therefore the statute could not apply.

*L. A. Whittington* and *C. F. Patterson,* for appellee.

Under the facts in this case, the peremptory instruction asked for by the plaintiff should have been granted. What explanation or excuse does he offer to justify the claim that he was exercising the care and caution of a

reasonable, prudent man? What explanation is made to justify any assumption whatsoever that the defendant was then keeping a "lookout" or that he had his car under control, or that he exercised ordinary care and caution in the operation of this most dangerous instrumentality? Absolutely nothing. There was no claim that the brakes were not working; there was no claim that his lights were defective and there was no claim that his view of the intersection of the roads or bayou was obstructed; there was no claim that he had his car under control. On the contrary, he admits and testified that he did not have his brakes on and therefore did not have his car under control. He admits that he started down the hill at the rate of twenty miles per hour, with his car in neutral. Common experience would teach him, as it teaches all of us, that the momentum of that car starting down that incline a quarter of a mile long without the brakes on, would cause it to reach a speed of twenty-five or thirty-five miles per hour. He admits that he was on the brink of the bayou before he realized that he was headed into it or headed into the wrong road, and he admits that he does not know whether he could have stopped his car or not. The only explanation offered is that where the sudden turn was made there was some loose gravel. That there was loose gravel or that there might be loose gravel, is all the more reason why he should have exercised sufficient care and caution so as to have his car under control in going down this incline, approaching this bridge or the intersection of the roads.

We submit, therefore, that the defendant under the facts in this case, could have had but one inevitable result from his conduct in operating his car as he did on this occasion, and that was, that it would turn over and down into the embankment. By his carelessness and admitted negligence he had jeopardized not only his own life, but the lives of the children that were in the car with him, among whom was the plaintiff. We submit to the court that the thing speaks for itself and *res ipsa loquitur* applies.

We therefore submit in all earnestness, that, regardless of any statutory provisions, from the admission that the car was being operated at twenty miles per hour, when he reached the top of the hill, the car was permitted to coast down hill without the brakes on and in neutral, that such operation was plainly reckless and wholly careless and negligent.

The plaintiff was entitled to the peremptory instruction asked for and that, too, regardless of any provisions of statute governing the operation of automobiles on a public highway, which may have been violated by the defendant on this occasion.

· If we are correct in this view of the record, the judgment of the court below must be affirmed.

## II.

But if we are mistaken in our position that the peremptory instruction asked for in this case should have been given, we submit to the court that the instructions given by the court to the jury clearly announces the law of this particular case.    Section 5777, Hemingway's Code.

The instructions complained of by the appellant in this case announced that the operation of a motor vehicle on the public highway in violation of the above law was negligence *per se,* and these instructions further advised the jury that if they believed that such negligence was the cause of the car going over the embankment or contributed to the car going over the embankment whereby plaintiff was injured, then it was their duty to find for the plaintiff. *National Casket Co.* v. *Powar,* 125 S. W. 279; *Harmon* v. *Barber,* 247 Fed. 7.

The above case is altogether in line with the instant case and the objections urged in this case are exactly the objections urged in the above case, that is to say, that the statute did not apply to passengers in the car, but was only applicable to others using the highway and that the unlawful speed was not negligence *per se,* but was

only evidence of negligence. See, too, *Ulmer* v. *Pistole,* 115 Miss. 491, 20 R. C. L., page 38.

The effect of the violation of the provisions of the statutes of Mississippi governing the operation and control of motor vehicles upon the public highway is to prevent, not only injury to persons using said highway, but is also intended and calculated to prevent and is effective in preventing injury to persons riding as guests in the car of any operator of any motor vehicle upon the public highway. The statutes are manifestly intended to prevent collisions, collisions equally as fatal to those who may be in the car as to those who may be walking along the highway or driving another vehicle along the highway or travelling in another vehicle along the highway. It is manifest, therefore, that it was the intention of the legislature in the enactment of these statutes to prevent accidents or injuries to all, whether guests riding in a motor vehicle, or whether pedestrians using the highway or whether persons driving a vehicle or automobile along the highway; that such is the reasonable effect of such statutes may not be disputed.

The appellant is urging the objection also upon the assumption that in this particular case there has been a rebuttal of the *prima-facie* case made. Accepting the argument presented by the appellant, the only rebuttal of this *prima-facie* case would be to show or to make some explanation on the part of the defendant and to establish that he had exercised every care and caution or that the injury did not result from the violation of said statutes; but that particular phase of the case is fully presented by the instructions for the determination of the jury. The court will note thtat the jury was instructed that the violation of this statute was negligence *per se,* but before they could find for the plaintiff they must believe from the evidence that the injury to the plaintiff was caused by the violation of the statute and by this particular negligence of the defendant.

There is not the insisted analogy between the statute here under discussion and the statute with reference to the operation of railroad trains.

It is urged, since the supreme court of the state
of Mississippi declared in construing the statute with
reference to the operation of railroad trains that any in-
fliction of injuries by the running of said trains is not
applicable to passengers, that it follows that this court,
with reference to the present statute, must hold that it is
not applicable to passengers. The language of the stat-
utes, however, is altogether different.

One statute is much broader in its application than
the other, for the contention of the appellant in this case
is in effect that it was not the intention of the legislature
to protect passengers by the enactment of these statutes
or guests in automobiles. We have shown that it is man-
ifest that it was the intention of the legislature to protect
the public and to protect every person who might be in-
jured in the operation of such motor vehicle. That the
supreme court did not clearly announce the intention of
the legislature with reference to the enactment of the
railroad statute is evidenced by the subsequent enact-
ment of the amendment by the legislature, making it ap-
plicable to passengers.

We submit, therefore, to the court that the violations
of section 5777 of the Code by the operator of a motor
vehicle on the public highway was negligence *per se,* and
that if such negligence directly caused the injury com-
plained of that such operator would be liable for dam-
ages for the injury. This, we submit, to the court, is the
law announced by the instructions complained of.

*Ratcliff & Kennedy,* in reply for appellant.

Counsel for appellee appears to doubt the application
of the *prima-facie* statute as to the operation of auto-
mobiles on public highways and the speed there fixed,
for, he invokes the doctrine *"res ipsa loquitur"* to jus-
tify the instructions obtained by appellee and to the ef-
fect that the operation of the car at a rate in excess of
ten miles per hour was negligence. However, if the doc-
trine of *res ipsa loquitur* was applied, its application

would merely make out a *prima-facie* case and not a conclusive one as stated by the instruction. 29 Cyc. 529.

Our own court has held that under the doctrine of *res ipsa loquitur* a presumption of negligence may arise but that it is merely evidence of negligence and not negligence *per se*. *Gulfport* v. *Hicks,* 76 So. 873.

Upon the comparison of the railroad statute and the motor vehicle statute, it will be seen that they are identical in principle. Each prescribes a rule of evidence in actions for damages and since our court has held that the railroad statute did not apply to passengers or persons on the train, it necessarily follows that the motor vehicle statute could not apply to passengers or guests in the car. It is not reasonable nor common sense and therefore cannot be the law, that a guest could sit in the car throughout a journey and without a word of protest, objection or complaint as to speed, the blowing of horns or the passing of pedestrians, enjoy hospitality for the day but when injury occurs, invoke the statute. This court has held that in actions against railroad companies a person could not invoke the statute as to the ringing of a bell or the blowing of a whistle when they actually saw the train. In other words, why give to a person notice of that which they already know?

Under the instructions given the appellee in this case, there could not be such a thing as an automobile accident without liability. For in any automobile accident where the car was moving at any speed whatsoever, the moving car was a cause or contributing cause of the injury, for it is inevitable that if a car stands still it cannot skid, break down or turn over.

Argued orally by *L. T. Kennedy,* for appellant, and *L. A. Whittington,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Friis, appeals from a judgment in favor of the appellee for five thousand dollars for personal in-

juries received while riding in an automobile operated by appellant and belonging to him. The plaintiff was a minor fourteen years old and was invited to make a trip with the appellant and some relatives and friends to Vicksburg on a certain occasion. There were seven people in the automobile, Mr. Friis, Mr. Lanehart, Mr. Lanehart's young daughter, Mr. Friis' niece, Mr. Kettringham, plaintiff, and her sister. They left Natchez about ten o'clock in the morning and reached Vicksburg shortly after noon on that day, remained in Vicksburg until about midnight, when they started on the return trip. On the public highway from Vicksburg to Natchez, along which the defendant was traveling south, about four or five miles out of Vicksburg, there was an incline or hill, at the foot of which was a road that intersected the main highway leading from Vicksburg to Natchez, and along which the defendant was driving his automobile at a rate of from twenty to twenty-five miles an hour; that at the foot of said hill the main highway turns to the left and the intersecting road turns to the right; and that at the point of intersection of said roads and lying between them was a ravine or bayou, and just beyond the point of intersection there was a bridge which crossed the bayou and main highway. As he approached the place of intersection, Mr. Friis was traveling on the right-hand side of the road and was about to take the road to the right, when he saw the bridge over the road to the left and knew that that was the road which led to Natchez. He thereupon undertook to steer the automobile into the road on the left, when it went over the embankment, turned turtle, and injured the plaintiff; her skull was fractured in a very serious manner, and for some time she was in a serious condition. She was carried to a hospital in Vicksburg and there treated, having an operation, and remained in the Vicksburg hospital some two weeks, when she returned home. The injury occurred a few days after the Natchez school opened where she attended school, and she was unable, on ac-

count of her injuries, to attend school any more during that session.

The defendant in part testifies as follows with reference to the happening of the injury:

"Q. Tell the jury how the accident happened? A. Well, we was coming from Vicksburg, and about four miles out of town, we was coming down a slope—when I got down to this slope I was coasting downhill about twenty miles an hour, and it looked like the road was right straight ahead; it looked like right straight ahead, and when I got to this curve, I couldn't tell it was a curve, couldn't see the curve until I got right where it was, and when I got to this curve I was on the right-hand side of the road, and when I seen the bridge, I knowed that was the way, and between where I was and the bridge there was a dark place that had a lot of weeds and bushes growed up in it, and I was headed right off in there, and I turned the wheel and throwed on the brakes, and when I did, the car skidded and turned right down this embankment.

"Q. State whether or not there was loose gravel along there? A. There was.

"Q. Did you know there was loose gravel there before you got on it? A. No, sir.

"Q. State whether or not you ran the car off of the embankment? A. Did not—it turned over; the back end went off first and the weight of the car pulled it off in there, and when it turned over the car was headed back towards Vicksburg."

The other witnesses testified that the automobile was going downhill at about twenty-five miles per hour.

The plaintiff obtained the following instruction:

"The court instructs the jury for the plaintiff that if they believe from the evidence in this case that the defendant, upon approaching the bridge at or near where the injury to plaintiff occurred, and while approaching said bridge, operated his car at a greater rate of speed than ten miles per hour, then under the law the defendant was guilty of negligence; and in this case if they

139 Miss.—25

further believe from a preponderance of the evidence that such negligence of the defendant was the cause of the car going over the embankment, or contributed to the car going over the embankment whereby plaintiff was injured, then it is the sworn duty of the jury to find for the plaintiff in such sum as they may believe from the evidence will compensate her for the injuries she sustained, not to exceed the sum of seven thousand five hundred dollars, the amount sued for.''

The plaintiff requested and was refused a peremptory instruction on liability. The instruction above set out invoked in plaintiff's behalf section 5777, Hemingway's Code, section 4, chapter 116, Laws of 1916, and, also, section 5785, Hemingway's Code, section 12, chapter 116, Laws of 1916 and the instruction above set out submitting this theory is complained of as constituting reversible error and the contention is made that the said sections above referred to do not operate in favor of a guest riding in an automobile being driven by the person in charge thereof, but that such statute only operates for the protection of other parties using the highway, and has no application to the other occupants of the automobile driven in violation of these statutes. Upon this question the members of this division of our court are disagreed, but we all think that independent of these sections, and upon the defendant's own testimony, he was guilty of negligence in the operation of the car under the circumstances, and that he is liable for the injuries inflicted as the result of such negligence.

It clearly appears from the defendant's testimony that he was going down a grade at about twenty miles an hour, in the middle of the night, and that he could not see clearly the situation lying ahead of him, and that he undertook to make a sharp curve while going at such unsafe rate of speed over a road with which he was not familiar. It certainly was unsafe and reckless to undertake to operate the automobile in the manner and under the circumstances in which it was being operated at the

time the injury occurred. An injury of the kind which did occur could be reasonably anticipated.

We think that, taking the defendant's own version of the affair as being true, he is liable for the injury, and the judgment will be affirmed.

*Affirmed.*